ANITA P. ARRIOLA, ESQ.
JOAQUIN C. ARRIOLA, JR., ESQ.
**ARRIOLA, COWAN & ARRIOLA**
259 Martyr Street, Suite 201
Hagatna, Guam 96910
Telephone:   (671) 477-9731/33
Telecopier:   (671) 477-9734

F I L E D
DISTRICT COURT OF GUAM
MAY - 5 2003
MARY L. M. MORAN
CLERK OF COURT

Counsel for Plaintiffs LOUIS VUITTON
MALLETIER, CHANEL, INC. and
PRADA, S.A.

## UNITED STATES DISTRICT COURT OF GUAM

| | |
|---|---|
| LOUIS VUITTON MALLETIER and CHANEL, INC., and PRADA, S.A. | ) CIVIL CASE NO. **03-00013** |
| | ) |
| Plaintiffs, | ) |
| | ) |
| vs. | ) |
| | ) |
| VENDOR DOE I, aka U.S.A. T-SHIRTS AND GIFTS, VENDOR DOE II, aka SU KIM, VENDOR DOE III, and DOES I THROUGH XX, | ) |
| | ) |
| Defendants. | ) |

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS'
EX PARTE APPLICATION FOR TEMPORARY RESTRAINING ORDER, SEIZURE
ORDER, ORDER TO SHOW CAUSE FOR PRELIMINARY INJUNCTION, ORDER
SEALING FILE AND ORDER ACCELERATING DISCOVERY**

# TABLE OF CONTENTS

INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

FACTUAL BACKGROUND

      A.   History of the Plaintiffs' Trademarks. . . . . . . . . . . . . . . . . . . . . . . . . 1

      B.   Investigation of Defendants' Illegal Sale of Counterfeit Goods . . . . . . . 3

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

    I.    AN IMMEDIATE EX PARTE TEMPORARY RESTRAINING ORDER IS NECESSARY AND APPROPRIATE TO PREVENT IRREPARABLE HARM TO PLAINTIFFS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

      A.   The Temporary Restraining Order Should Be Issued Without Notice to Defendants. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

      B.   Plaintiffs Have a Strong Likelihood of Success on the Merits. . . . . . . . . 8

      C.   An Adequate Remedy at Law is Unavailable. . . . . . . . . . . . . . . . . . . 10

      D.   Unless Defendants are Enjoined Immediately, Plaintiffs Will be Irreparably Injured.   . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

      E.   The Balance of Equities Weighs in Favor of Plaintiffs to Enjoin Defendants' Activities. . . . . . . . . . . . . . . . . . . . . . . . . . 12

      F.   The Issuance of a Restraining Order is in the Public Interest. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

    II.   AN EX PARTE SEIZURE ORDER IS WARRANTED IN THIS CASE AND IS THE ONLY MEANS OF ADEQUATELY PROTECTING PLAINTIFFS' TRADEMARK RIGHTS. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

    III.   THE FILE IN THIS ACTION SHOULD BE TEMPORARILY SEALED. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

    IV.   DISCOVERY IN THIS MATTER SHOULD BE ACCELERATED. . . . . . . . 18

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

ARRIOLA, COWAN & ARRIOLA, HAGATNA, GUAM 96910

-i-

<u>Cases</u>

<u>Alpha Industries, Inc. v. Alpha Steel Tube & Shapes, Inc.</u>,
    616 F.2d 440, 205 U.S.P.Q. 981 (9th Cir. 1980) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

<u>Basicomputer Corp v. Scott</u>,
    973 F.2d 507 (6th Cir. 1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

<u>Chanel v. Baro's French Enterprise, et al.</u>,
    CV89-0048 (D.Guam) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 14, 18

<u>Communications Satellite Corporation v. Comcet, Inc.</u>
    429 F.2d 1245 (4th Cir. 1970) <u>cert. den.</u> 400 U.S. 942 (1970) . . . . . . . . . . . . . . . . . . . 11

<u>Corning Glass Works v. Jeannette Glass Co.</u>,
    308 F.Supp. 1321 (S.D.N.Y. 1970), <u>aff'd.</u> 432 F.2d 784 (2d Cir. 1970) . . . . . . . . . . . . 12

<u>Doran v. Salem Inn, Inc.</u>,
    422 U.S. 922, 95 S.Ct. 2561, 45 L.Ed. 2d 648 (1975) . . . . . . . . . . . . . . . . . . . . . . . . . . 7

<u>Ecolab, Inc. v. Paolo</u>,
    753 F. Supp. 1100 (E.D.N.Y. 1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

<u>Fimab-Finanziaria Maglificio Biellese Fratelli Fila S.p.A.</u>
<u>and Fila Sports, Inc. v. Bruce Kitchen, et al.</u>,
    548 F.Supp. 248 (S.D. Fla. 1982) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

<u>Gucci America, Inc. v. Action Activewear, Inc.</u>,
    759 F. Supp. 1060, 19 U.S.P.Q.2d 1448 (S.D.N.Y. 1991) . . . . . . . . . . . . . . . . . . . . . . 10

<u>Helene Curtis Industries. Inc. v. Church & Dwight Co.</u>,
    560 F.2d 1325 (7th Cir. 1977) <u>cert. denied</u> 434 U.S. 1070 (1978) . . . . . . . . . . . . . . . . 15

<u>Hills Bros. Coffee, Inc. v. Hills Supermarkets, Inc.</u>,
    428 F.2d 379 (2d Cir. 1970) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

<u>Honig v. Doe</u>,
    484 U.S. 305, 108 S.Ct. 592, 98 L.Ed. 2d 686 (1988) . . . . . . . . . . . . . . . . . . . . . . . . . . 7

<u>Hunting World, Inc. v. City Hill Co. (Guam) Ltd., et al.</u>, Civil Action No. CIV93-00053  7, 14,18

ARRIOLA, COWAN & ARRIOLA, HAGATNA, GUAM 96910

-ii-

Hunting World, Inc. v. Jimar's Investment Co., et al., Civil Action No. CIV92-00050 . . . . . . . . 7

In re Vuitton et Fils S.A.,
    606 F.2d 1 (2d Cir. 1979) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

Jockey Club, Inc. v. Jockey Club of Las Vegas,
    595 F.2d 1167 (9th Cir. 1979) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

Kraft General Foods, Inc. v. BC- USA, Inc.,
    840 F. Supp. 344, 29 U.S.P.Q.2d 1919 (E.D. Pa. 1993) . . . . . . . . . . . . . . . . . . . . . . . . . 12

Louis Vuitton Malletier and Chanel, Inc. v. Suzie H.C. Yim, et al.,
    Civil Case No. 00-00069 (D. Guam) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 14, 18

Louis Vuitton Malletier v. Salgado, Civil Case No. 03-00001
    (D. Guam) (Orders dated January 8, 2003 and January 13, 2003) . . . . . . . . . . . . . . . 7, 14

Louis Vuitton v. Jimar's Investment Co., et al.,
    CV89-00059 (D.Guam) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 14, 18

Louis Vuitton v. Marina Pizarro,
    CV89-00060 (D.Guam) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 14, 18

Louis Vuitton v. Ok Cha Sun, et al.,
    CV89-00061 (D.Guam) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 14, 18

McLeod v. Hosmer-Dorrance, Inc.,
    1976 U.S. Dist. LEXIS 12289, 192 U.S.P.Q. 683 (N.D. Cal. 1976) . . . . . . . . . . . . . . . 12

Metro Pub., Ltd. v. San Jose Mercury News,
    987 F.2d 637, 25 U.S.P.Q.2d 2049 (9th Cir. 1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

Morales v. Trans World Airlines,
    504 U.S. 374, 112 S.Ct. 2031, 119 L.Ed. 2d 157 (1992) . . . . . . . . . . . . . . . . . . . . . . . . . 7

Northeast Women's Ctr., Inc. v. McMonagle,
    665 F. Supp. 1147 (E.D. Pa. 1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

Opticians Ass'n v. Independent Opticians,
    920 F.2d 187 (3d Cir. 1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

Park 'N Fly, Inc. v. Dollar Park and Fly, Inc.,
    782 F.2d 1508 (9th Cir. 1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

ARRIOLA, COWAN & ARRIOLA, HAGATNA, GUAM 96910

-iii-

<u>Playboy Enterprises, Inc. v. Baccarat Clothing Co., Inc.</u>,
     692 F.2d 1272 (9th Cir. 1982) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

<u>Polo Fashions, Inc. v. Diebolt, Inc.</u>,
     634 F. Supp. 786, 229 U.S.P.Q. 924 (D. Kan. 1986) . . . . . . . . . . . . . . . . . . . . . . . . 9

<u>Pure Food Products, Inc. v. American Bakeries Co.</u>,
     356 F. Supp. 701, 177 U.S.P.Q. 599 (N.D. Ill. 1973) . . . . . . . . . . . . . . . . . . . . . . . 8

<u>Reebok v. CHC, Inc., et al.</u>,
     CV88-00030 (D.Guam) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 14, 18

<u>Regents of University of California v.</u>
<u>American Broadcasting Companies, Inc.</u>,
     747 F.2d 511 (9th Cir. 1984) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

<u>Roland Mach. Co. v. Dresser Indus., Inc.</u>,
     749 F.2d 380 (7th Cir. 1984) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

<u>Ross-Whitney Corporation v. Smith-Kline & French Laboratories</u>, 207 F.2d 190 (9th Cir. 1953)
. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

<u>RWT Corp. v. Wonderware Corp.</u>,
     931 F. Supp. 583 (N.D. Ill 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

<u>Stahly, Inc. v. M.H. Jacobs Co.</u>,
     183 F.2d 914 (7th Cir. 1950) <u>cert.</u> <u>den.</u> 340 U.S. 896 (1950) . . . . . . . . . . . . . . . . . . . 13

<u>Vuitton et Fils S.A. v. Crown Handbags</u>,
     492 F.Supp. 1071 (S.D.N.Y. 1979), <u>aff'd.</u> 622 F.2d 577 (2d Cir. 1980) . . . . . . . . . . . . 9

<u>Vuitton v. White</u>,
     945 F.2d 569 (3d Cir. 1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15, 16

**Statutes**

15 U.S.C. § 1115(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

15 U.S.C. § 1118 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

15 U.S.C. § 1503 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

ARRIOLA, COWAN & ARRIOLA, HAGATNA, GUAM 96910

-iv-

15 U.S.C. §1116 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 14, 16, 17, 19

5 G.C.A. § 32201 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

**Miscellaneous**

Fed. R. Civ. P. 65(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

Federal Rules of Civil Procedure 30(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

Federal Rules of Civil Procedure 34(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

ARRIOLA, COWAN & ARRIOLA, HAGATNA, GUAM 96910

**INTRODUCTION**

This is an action for trademark infringement, trademark counterfeiting, false designation of origin and unfair competition against defendants VENDOR DOE I aka U.S.A. T-Shirts and Gift Items, VENDOR DOE II aka Su Kim and VENDOR DOE III, who are selling and distributing handbags and other goods falsely bearing the registered trademarks of plaintiffs Louis Vuitton Guam, Inc. ("Louis Vuitton"), Chanel, Inc. ("Chanel") and PRADA S.A. ("Prada") (collectively "Plaintiffs"). The goods sold by defendants are inferior imitations and counterfeit copies of the high quality merchandise sold by plaintiffs under their federally registered trade names and trademarks (hereinafter referred to as "the counterfeit goods"). Defendants have admitted selling "copies" of plaintiffs' genuine merchandise. H. Mitsuoka Decl.

Plaintiffs' ex parte request for a temporary restraining order, seizure order, order to show cause for preliminary injunction, order sealing file and for accelerated discovery is made to prevent irreparable harm to plaintiffs while this action remains pending. Without ex parte entry of these orders, plaintiffs cannot halt the sale or disappearance of counterfeit goods or otherwise prevent the destruction of crucial evidence which would enable plaintiffs to ascertain the manufacturers, suppliers, and distributors of the counterfeit goods beyond the named defendants. Unless such orders are issued ex parte, defendants will simply dispose of or hide the counterfeit goods and related business records and they will disclaim knowledge of the traffickers of the counterfeit goods. Consequently, the ex parte orders requested by plaintiffs must be issued without delay.

**FACTUAL BACKGROUND**

A.    **History of the Plaintiffs' Trademarks.**

Plaintiff Louis Vuitton has been a master trunk maker in Paris since 1854. H. Mitsuoka Decl.

-1-

ARRIOLA, COWAN & ARRIOLA, HAGATNA, GUAM 96910

It is a prestigious firm whose products have always been acknowledged as the "epitome of refinement." Id. The products of Louis Vuitton are renowned for their unique craftsmanship and the highest standards of quality. Id. They have been sold and distributed throughout the United States and the world under one or more of Louis Vuitton's trademarks, including those attached to the Verified Complaint filed herein. Id. Louis Vuitton has been and now is producing, advertising, offering for sale and selling various merchandise bearing one or more of its trademarks, including trunks, luggage, travel accessories, handbags, small leather goods such as keycases, wallets, cigarette cases, belts, apparel, scarves, and various garments and other merchandise, in interstate commerce. Id. Using its trademarks, Louis Vuitton has established an outstanding reputation throughout the United States and the world as a supplier of high quality fashionable travel merchandise. Id.

Chanel has its principal place of business in Paris, France. Chanel merchandise is manufactured in France and Italy. Chanel has been an independent company beginning with the forming of "Les Parfums Chanel" in 1924. It is a prestigious firm who has always been acknowledged as a Number One Fashion House providing the utmost luxury, originality and quality to its customers through its products. The products of Chanel are renowned for their unique craftsmanship and the highest standards of quality. Chanel produces a variety of products including: women's clothing; handbags; luggage; small leather goods such as wallets, agendas, keycases, cigarette cases, coin holders, and cosmetic purses; watches, fine jewelry and costume jewelry including earrings, brooches, necklaces, bracelets, rings, and anklets; fragrances and beauty products such as skin care and cosmetics; shoes; scarves; ties; hats and gloves.

The products of PRADA are renowned for their unique craftsmanship and the highest

-2-

standards of quality. The history of the Prada trademark dates back to the early twentieth century when Mario Prada opened two top quality leather goods stores in Milan, Italy. Prada products include top quality leather goods, shoes, ready-to-wear collections, bags, and other items featuring exclusive fabrics, precious hides and traditional craftsmanship.

Highly sophisticated styling and production techniques have attained worldwide prominence for PRADA products. PRADA has established a unique operation for the production of its bags, shoes and apparel. In Tuscany, near Florence, all the prototypes are designed and produced. All phases of manufacturing are kept under constant scrutiny. PRADA controls the product through all stages of development, so that only the highest quality bears the PRADA trademark. PRADA's quality control is evident in the distribution of its products in more than one hundred and forty directly operated boutiques worldwide.

The consistent high quality of Plaintiffs' merchandise is known throughout the United States and the world. Plaintiffs and their worldwide retail stores carefully monitor the manufacturing quality of their products and virtually all aspects of advertising, marketing and promotion of such products. As a result of plaintiffs' substantial sales, advertising, and high quality standards, plaintiffs' trademarks have acquired considerable value. The consuming public identifies plaintiffs as the source of products to which the marks are applied and that the products bearing their marks are of high quality and workmanship.

**B.**     **Investigation of Defendants' Illegal Sale of Counterfeit Goods.**

On February 19, 2003, Hajime Mitsuoka and Eri Matsuo, both employees of the Intellectual Property office of LVMH Fashion Group in Japan, traveled to Guam for the purpose of posing as tourists and determining whether certain stores and vendors on Guam were selling counterfeit goods

-3-

marked with the Louis Vuitton, Chanel and Prada names and trademarks. Mitsuoka and Matsuo visited a store known as U.S.A. T-Shirts and Gift Items, located in Upper Tumon, across the street from Burger King; an unmarked and unnamed store located behind ABC Store in Tumon (across the street from the Guam Hyatt Regency Hotel); and an outdoor sidewalk vendor at the Plaza De Espana in Hagatna, Guam. Mr. Mitsuoka and Ms. Matsuo purchased several counterfeit items from USA T-Shirts and Gift Items shop, including a wallet marked with the Louis Vuitton trademark; a small black handbag and keycase marked with the Prada trademark, a bracelet marked with the Chanel trademark and a cellphone strap marked with the Prada trademark. Due the number of their purchases, Mr. Mitsuoka and Ms. Matsuo also received for free three cellphone holders marked with the Gucci trademark and a cellphone holder marked with the Louis Vuitton trademark. H. Mitsuoka Decl.

At the unnamed and unmarked store located behind the ABC Store in Tumon, Mr. Mitsuoka and Ms. Matsuo purchased a small cigarette case marked with the Louis Vuitton trademark, a necklace marked with the Chanel trademark and a small black handbag marked with the Prada trademark. Id.

At the Plaza de Espana outdoor sidewalk vendor, Mr. Mituoka and Ms. Matsuo purchased a hand-held cellphone holder marked with the Louis Vuitton trademark; and a keyholder marked with the Chanel trademark. Id.

Defendants are not authorized retailers or dealers of plaintiffs' merchandise. H. Mitsuoka Decl.; P. Untalan Decl.; R. Terlaje Decl. Mr. Mitsuoka and Ms. Matsuo also observed hundreds of other counterfeit goods bearing the Louis Vuitton, Chanel and Prada names or trademarks sold by the defendants. H. Mitsuoka Decl.

This action has been instituted to remedy what is tantamount to the theft of a substantial

-4-

portion of plaintiffs' income, reputation and goodwill by the sale of unauthorized, counterfeit merchandise. Defendants are presently offering for sale, distributing and/or selling goods practically identical in appearance, though not in quality, to the products distributed by plaintiffs. H. Mitsuoka Decl.; P. Untalan Decl., R. Terlaje Decl. The goods sold by defendants bear trademarks identical to those used by plaintiffs on genuine Louis Vuitton, Chanel and Prada merchandise.

Defendants' sale of counterfeit goods is without plaintiffs' permission and without payment of royalties or licensing fees of any kind. Because defendants pay no royalties and offer goods of inferior quality, they undercut the prices of legitimate vendors who abide by the law in the conduct of their business activities. More importantly, defendants' use of the identical labeling and trademarks of plaintiffs allows defendants to trade upon and tarnish the valuable reputation of plaintiffs in its name, marks and labeling. The consequent damage to plaintiffs' names, reputations and goodwill is incalculable and plaintiffs are irreparably injured. H. Mitsuoka Decl.; P. Untalan Decl.; R. Terlaje Decl.

The sale of such counterfeit goods also causes significant confusion in the mind of the consuming public as to who produces and/or authorizes the sale of said merchandise. H. Mitsuoka Decl.; P. Untalan Decl.; R. Terlaje Decl. Plaintiffs have undoubtedly lost sales due to actual confusion on the part of customers who mistakenly believe that the counterfeit items sold by defendants are the genuine products of plaintiffs. Furthermore, the counterfeit goods are not of the same high quality of the genuine products sold by plaintiffs under their trademarks. Plaintiffs legitimately fear not only a current loss of sales to defendants, but also a future loss of sales and reputation because customers have no way of knowing that defendants' inferior merchandise is not of plaintiffs' making. Id.

-5-

ARRIOLA, COWAN & ARRIOLA, HAGATNA, GUAM 96910

# ARGUMENT

I. **AN IMMEDIATE EX PARTE TEMPORARY RESTRAINING ORDER IS NECESSARY AND APPROPRIATE TO PREVENT IRREPARABLE HARM TO PLAINTIFFS.**

    A.    **The Temporary Restraining Order Should Be Issued Without Notice to Defendants.**

15 U.S.C. § 1116 (the "Lanham Act") authorizes this Court to grant injunctions "... to prevent the violation of right" of the owner of a mark. 15 U.S.C. § 1116. Further, this Court is authorized to issue a restraining order ex parte to protect the rights of the trademark owner. 15 U.S.C. § 1118. Fed. R. Civ. P. 65(b) allows a temporary restraining order to be issued without notice if it appears from affidavits or the verified complaint that immediate or irreparable injury will result to the applicant before the adverse party can be heard in opposition and the applicant's attorney certifies to the court in writing the reasons supporting the claim that notice should not be required. L.R. 7.1 also provides that the Court may waive the notice requirement of L.R. 7.1(j)(1) if "the interests of justice" require that notice not be given. Plaintiffs fulfill all of the requirements under each of the foregoing authorities. See Verified Complaint; H. Mitsuoka Decl.; P. Untalan Decl.; R. Terlaje Decl.

It is well established in law in this circuit that a plaintiffs may obtain a temporary restraining order and preliminary injunction against trademark infringement and unfair competition. Ross-Whitney Corporation v. Smith-Kline & French Laboratories, 207 F.2d 190 (9th Cir. 1953). It is also well established in this circuit that issuance of a temporary restraining order is an appropriate procedure to be followed in the case of irreparable injury from the use of a trademark. This Court has been particularly vigilant of the rights of trademark holders and has issued immediate

-6-

ARRIOLA, COWAN & ARRIOLA, HAGATNA, GUAM 96910

ex parte temporary restraining orders to protect those rights. <u>Louis Vuitton Malletier v. Salgado,</u> Civil Case No. 03-00001 (D. Guam) (Orders dated January 8, 2003 and January 13, 2003) <u>Louis Vuitton Malletier and Chanel, Inc. v. Suzie H.C. Yim, et al.,</u> Civil Case No. 00-00069 (D. Guam) (Order dated December 19, 2000); <u>Hunting World, Inc. v. City Hill Co. (Guam) Ltd., et al.,</u> Civil Action No. CIV93-00053; <u>Hunting World, Inc. v. Jimar's Investment Co., et al.,</u> Civil Action No. CIV92-00050. (D. Guam, Order dated August 17, 1992); <u>Louis Vuitton v. Ok Cha Sun, et al.,</u> CV89-00061 (D.Guam) (Order dated October 27, 1989); <u>Louis Vuitton v. Marina Pizarro,</u> CV89-00060 (D.Guam) (Order dated October 27, 1989); <u>Louis Vuitton v. Jimar's Investment Co., et al.,</u> CV89-00059 (D.Guam) (Order dated October 27, 1989); <u>Chanel v. Baro's French Enterprise, et al.,</u> CV89-0048 (D.Guam) (Order dated August 30, 1989); <u>Reebok v. CHC, Inc., et al.,</u> CV88-00030 (D.Guam) (Order dated June 17, 1988).

In order to obtain a temporary restraining order, plaintiffs' must establish that: (1) they have a strong likelihood of success on the merits, <u>Doran v. Salem Inn, Inc.,</u> 422 U.S. 922, 931, 95 S.Ct. 2561, 45 L.Ed. 2d 648 (1975); (2) an adequate remedy at law is unavailable, <u>Morales v. Trans World Airlines,</u> 504 U.S. 374, 381, 112 S.Ct. 2031, 119 L.Ed. 2d 157 (1992); (3) plaintiffs will suffer irreparable harm if the order is not granted, <u>Roland Mach. Co. v. Dresser Indus., Inc.,</u> 749 F.2d 380, 386 (7th Cir. 1984); (4) the balance of hardships between plaintiffs and defendants weighs in favor of plaintiffs, <u>Honig v. Doe,</u> 484 U.S. 305, 328, 108 S.Ct. 592, 98 L.Ed. 2d 686 (1988); and (5) the public interest is served by the issuance of an injunction. <u>Regents of University of California v. American Broadcasting Companies, Inc.,</u> 747 F.2d 511, 515 (9th Cir. 1984). Plaintiffs meet all of these criteria.

ARRIOLA, COWAN & ARRIOLA, HAGATNA, GUAM 96910

-7-

**B.      Plaintiffs Have a Strong Likelihood of Success on the Merits.**

There are two basic elements in a trademark infringement action. First, a plaintiff must prove the validity of the mark it seeks to protect. Jockey Club, Inc. v. Jockey Club of Las Vegas, 595 F.2d 1167, 1168 (9th Cir. 1979). Second, the plaintiffs must prove that the use of a similar mark by the defendants is likely to cause confusion in the market place concerning the source of the differing products. Id.

The Plaintiffs' marks are registered in the U.S. Patent and Trademark Office. Exhibits A-V, attached to Verified Complaint. Plaintiffs' registered trademarks are "conclusive evidence of the validity of the registered mark and of the registration of the mark, of the registrant's ownership of the mark, and of the registrant's exclusive right to use the registered mark in commerce." 15 U.S.C. § 1115(b) (emphasis added); see Pure Food Products, Inc. v. American Bakeries Co., 356 F. Supp. 701, 707, 177 U.S.P.Q. 599 (N.D. Ill. 1973) (plaintiffs' certificates of registration are prima facie evidence of ownership). Plaintiffs have not authorized defendants' use of, or sale of items bearing their registered trademarks. H. Mitsuoka Decl.; P. Untalan Decl.; R. Terlaje Decl. Plaintiffs therefore satisfy the first element of a trademark infringement action.

Under the second element, plaintiffs must prove that there is a likelihood of confusion as to the identity or association between plaintiff and defendant due to their common use of the trade name and trademark. Alpha Industries, Inc. v. Alpha Steel Tube & Shapes, Inc., 616 F.2d 440, 443, 205 U.S.P.Q. 981 (9th Cir. 1980).[1] In determining whether the likelihood of confusion exists, the Ninth

---

[1]      This is true for both federal counts alleged in plaintiffs' Verified Complaint under 15 U.S.C. § 1114(1) and 15 U.S.C. § 1125(a). New West Corp. v. NYM Co. of California, Inc., 595 F.2d 1194, 1202 (9th Cir. 1979) ("ultimate test is whether the public is likely to be confused or deceived by the similarity of the marks"). Actual confusion need not be shown to prevail in a Lanham Act trademark infringement suit; the likelihood of confusion is sufficient. Lois Sportswear, U.S.A., Inc. v. Levi Strauss & Co., 799 F.2d 867, 875, 230 U.S.P.Q. 831 (2d Cir. 1986).

ARRIOLA, COWAN & ARRIOLA, HAGATNA, GUAM 96910

Circuit has articulated a five-factor test: (1) the similarity of the marks; (2) evidence of actual confusion; (3) relationship between plaintiffs' and defendants' goods and channels of trade; (4) the strength of plaintiffs' marks; and (5) defendants' intent in adopting plaintiffs' marks. Park 'N Fly, Inc. v. Dollar Park and Fly, Inc., 782 F.2d 1508, 1509 (9th Cir. 1986).

Here, the marks on the goods sold by defendants are virtually indistinguishable from those found on the merchandise produced by Plaintiffs. The items purchased by Mr. Mitsuoka and Ms. Matsuo from defendants bear the words "Louis Vuitton" or the distinctive "LV" monogram; "Chanel" or the "_____" logo; "Prada" or the "Prada" logo. H. Mitsuoka Decl.; P. Untalan Decl.; R. Terlaje Decl.; Polo Fashions, Inc. v. Diebolt, Inc., 634 F. Supp. 786, 795, 229 U.S.P.Q. 924 (D. Kan. 1986) (substantial likelihood of confusion was caused by similarity of embroidered polo logo and label mark on counterfeit shirts); Vuitton et Fils S.A. v. Crown Handbags, 492 F.Supp. 1071, 1076 (S.D.N.Y. 1979), aff'd. 622 F.2d 577 (2d Cir. 1980) (defendants' sale of products and trademarks exactly mimicking plaintiffs' results in confusion and deception the Lanham Act was designed to prevent).

Next, use of the Plaintiffs' trademarks by defendants has already led to confusion and is persuasive proof that future confusion is likely. H. Mitsuoka Decl. Although the genuine plaintiffs' merchandise is of vastly superior quality to the counterfeit items purchased by Mr. Mitsuoka, the items are similar enough in nature and appearance that the typical buyer will mistake the counterfeit goods for the genuine items. Further, plaintiffs' products and defendants' counterfeit goods compete in the same consumer and geographic (Guam) market. Defendants marketed the counterfeit items with other counterfeit "brand name" merchandise, giving the appearance that they sold genuine "brand name" products. H. Mitsuoka Decl.

ARRIOLA, COWAN & ARRIOLA, HAGATNA, GUAM 96910

-9-

As discussed above, plaintiffs' marks are inherently distinctive and strong; under the trademark laws, they are afforded the widest gambit of protection from infringing uses. Finally, defendants' sale of the counterfeit items is not innocent or inadvertent. Defendants admitted that the items they sold are "copies" of the genuine products of plaintiffs'. H. Mitsuoka Decl. It is obvious that defendants intended to appropriate plaintiffs' customers and to trade on plaintiffs' goodwill.

Defendants' actions are plainly in violation of the Lanham Act. Gucci America, Inc. v. Action Activewear, Inc., 759 F. Supp. 1060, 1063, 19 U.S.P.Q.2d 1448 (S.D.N.Y. 1991) (operators of retail clothing shops, by offering for sale counterfeit Gucci and Polo sportswear, were guilty of trademark infringement and unfair competition). Based upon the overwhelming evidence, defendants' admissions that they knew they were selling counterfeit goods, the incontestability of plaintiffs' registered trademarks, and the high probability of confusion, plaintiffs have established a strong likelihood of success on the merits of its trademark infringement and unfair competition claims against defendants. Metro Pub., Ltd. v. San Jose Mercury News. 987 F.2d 637, 640, 25 U.S.P.Q.2d 2049 (9th Cir. 1993) (once plaintiff has demonstrated likelihood of confusion, irreparable harm is presumed); In re Vuitton et Fils S.A., 606 F.2d 1, 4 (2d Cir. 1979) (ordering the district court to enter an ex parte temporary restraining order due to the likelihood of product confusion).

## C.    An Adequate Remedy at Law is Unavailable.

A legal remedy is inadequate if the plaintiffs' injury is a continuing one, where the last available remedy at law would relegate the plaintiffs to filing a separate claim for damages each time it is injured anew. Northeast Women's Ctr., Inc. v. McMonagle, 665 F. Supp. 1147, 1153 (E.D. Pa. 1987). Unless a restraining order is granted, plaintiffs here would be required to file separate claims

-10-

ARRIOLA, COWAN & ARRIOLA, HAGATNA, GUAM 96910

for damages each time the defendants sold counterfeit goods bearing the trade names or trademarks of plaintiffs. Because plaintiffs would receive legal relief only through a multiplicity of lawsuits, a restraining order is warranted. Ecolab, Inc. v. Paolo, 753 F. Supp. 1100, 1110 (E.D.N.Y. 1991). Further, a loss of customer goodwill, which is suffered by plaintiffs in this case, constitutes immeasurable damage, thereby rendering alternative remedies at law unavailable. Basicomputer Corp v. Scott, 973 F.2d 507, 512 (6th Cir. 1992).

### D. Unless Defendants are Enjoined Immediately, Plaintiffs Will be Irreparably Injured.

Plaintiffs are irreparably harmed by defendants' actions in several ways. First, the damage caused by confusion to the public is incapable of precise financial measurement given the intangible nature of plaintiffs' goodwill. Communications Satellite Corporation v. Comcet, Inc., 429 F.2d 1245, 1253 (4th Cir. 1970) cert. den. 400 U.S. 942 (1970).

Second, a trade name or trademark is a badge. It represents to the world the identity of the source or origin of the goods that bear it. Plaintiffs' reputation rests with its trademarks. When defendants uses the trademarks of plaintiffs, customers associate defendants' goods with plaintiffs. If defendants continue to use plaintiffs' trademarks, defendants will trade upon and tarnish plaintiffs' inestimable and well-earned reputation. Where reputation is at stake, irreparable injury for the issuance of a preliminary injunction is presumed. Hills Bros. Coffee, Inc. v. Hills Supermarkets, Inc., 428 F.2d 379, 381 (2d Cir. 1970); RWT Corp. v. Wonderware Corp., 931 F. Supp. 583, 591 (N.D. Ill 1996) (irreparable harm usually presumed in trademark infringement cases).

Third, customers have bought and will continue to buy defendants' goods, believing that they are connected to or associated with plaintiffs. Plaintiffs therefor incur an enormous loss of revenue

ARRIOLA, COWAN & ARRIOLA, HAGATNA, GUAM 96910

-11-

which is difficult to ascertain. Given the illicit nature of counterfeiting, it is unlikely that accurate records exist to establish the actual dollar amount lost by plaintiffs. In <u>McLeod v. Hosmer-Dorrance, Inc.</u>, 1976 U.S. Dist. LEXIS 12289, 192 U.S.P.Q. 683, 686 (N.D. Cal. 1976), for example, the court noted that a defendants' use of the plaintiffs' trademark "supports a finding of irreparable injury in the sense that it may not be fully compensable in damages."

Finally, by depriving plaintiffs of the ability to control the nature and quality of defendants' goods, defendants inflict serious harm upon plaintiffs. This deprivation, without more, constitutes irreparable injury. <u>Kraft General Foods, Inc. v. BC- USA, Inc.</u>, 840 F. Supp. 344, 351, 29 U.S.P.Q.2d 1919 (E.D. Pa. 1993) ( trademark owner's lack of control over trade reputation constitutes irreparable injury supporting injunction).

**E.     The Balance of Equities Weighs in Favor of Plaintiffs to Enjoin Defendants' Activities.**

Plaintiffs' goodwill, reputation, loss of trade and control over its products are irreparably injured by defendants' sale and distribution of counterfeit goods bearing trademarks identical to those of the plaintiffs. In addition, the consuming public suffers irreparable injury as a result of the confusion and deception caused by defendants' sale of the counterfeit goods. The inconvenience to defendants, if any, is merely economic, consisting of lost sales from their counterfeit goods. This is a loss which the defendants "may justifiably be called upon to bear." <u>Corning Glass Works v. Jeannette Glass Co.</u>, 308 F.Supp. 1321, 1328 (S.D.N.Y. 1970), <u>aff'd.</u> 432 F.2d 784 (2d Cir. 1970). Moreover, whatever other equities defendants might have, they have been vitiated by their flagrant and <u>admittedly</u> unlawful acts in selling the counterfeit goods. In weighing defendants' possible economic loss against the irreparable harm to plaintiffs and the consuming public, it is indisputable

-12-

ARRIOLA, COWAN & ARRIOLA, HAGATNA, GUAM 96910

that the balance of equities weighs heavily in plaintiffs' favor.

**F.     The Issuance of a Restraining Order is in the Public Interest.**

The consuming public has the right  to be free from the deception and misbranding which results from unfair competition by defendants' unlawful and unauthorized use of plaintiffs' trade names and trademarks. Stahly, Inc. v. M.H. Jacobs Co., 183 F.2d 914, 917 (7th Cir. 1950) cert. den. 340 U.S. 896 (1950) (trademark laws and the law of unfair competition are concerned  with the protection of the public from fraud and deceit).  Guam consumers and visiting tourists are deceived by defendants' use of plaintiffs' trademarks while defendants trade upon plaintiff's reputations in selling shoddy, inferior, and defective goods to consumers.  Further, as a result of trademark infringement by defendants, the consuming public is denied the benefit of their bargains.  Playboy Enterprises, Inc. v. Baccarat Clothing Co., Inc., 692 F.2d 1272, 1275 (9th Cir. 1982).

Guam has a strong, overriding interest in preventing illicit trafficking of counterfeit goods. Guam statutes prohibit defendants' unlawful activities in order to protect consumers here.  See 5 G.C.A. § 32201,  et. seq. (deceptive trade practices).  It is therefore in the public interest for an immediate restraining order to issue to protect consumers from being defrauded by the defendants' sale of counterfeit goods.

In sum, all of the requirements for issuance of a restraining order are met here, and an  order should therefore issue immediately.

**II.     AN EX PARTE SEIZURE ORDER IS WARRANTED IN THIS CASE AND IS THE ONLY MEANS OF ADEQUATELY PROTECTING PLAINTIFFS' TRADEMARK RIGHTS.**

Plaintiffs request that the court issue a seizure order against defendant without notice, permitting the United States Marshal, or other peace officer, to seize the counterfeit Louis Vuitton,

ARRIOLA, COWAN & ARRIOLA, HAGATNA, GUAM 96910

-13-

Chanel and Prada merchandise and related business records in the possession, custody and control of defendants in order to preserve the evidence of defendants' illegal activities. 15 U.S.C. § 1116(d) authorizes this Court to issue such an ex parte order. This Court has previously issued ex parte seizure orders in other trademark infringement actions, recognizing that in the absence of ex parte relief, counterfeiters could destroy, transfer or conceal their counterfeit goods and any records documenting their unlawful activities. Reebok v. CHC, Inc., et al., CV88-00030 (D.Guam) (Order dated June 17, 1988); Chanel v. Baro's French Enterprise, et al., CV89-0048 (D.Guam) (Order dated August 30, 1989); Louis Vuitton v. Jimar's Investment Co., et al., CV89-00059 (D.Guam) (Order dated October 27, 1989) ; Louis Vuitton v. Marina Pizarro, CV89-00060 (D.Guam) (Order dated October 27, 1989); Louis Vuitton v. Ok Cha Sun, et al., CV89-00061 (D.Guam) (Order dated October 27, 1989); Hunting World, Inc. v. City Hill Co. (Guam) Ltd., et al., Civil Action No. CIV93-00053; Hunting World, Inc. v. Jimar's Investment Co., et al., Civil Action No. CIV92-00050; Louis Vuitton, et al. v. Suzie H.C. Yim, et al., Civil Action No. 00-00069 (Order dated December 19, 2000); Louis Vuitton Malletier v. Salgado, Civil Case No. 03-00001 (D. Guam) (Orders dated January 8, 2003 and January 13, 2003).

15 U.S.C. § 1116(d)(4)(B)(i) - (vii), as amended, imposes certain conditions to be met prior to issuance of an ex parte seizure order. The Court must find that: an order other than an ex parte seizure order is inadequate to achieve the purposes of the Lanham Trade-Mark Act; plaintiffs have not publicized the requested seizure; plaintiffs are likely to succeed in showing that the defendants used counterfeit marks in connection with the sale of goods; immediate and irreparable injury will occur if such seizure is not ordered; the matter to be seized will be located at the place identified in the application; and the defendants would destroy, move, or hide the goods if plaintiffs provided

-14-

notice to them.

All of those requirements are met here. An order other than an ex parte seizure order would be inadequate here. Providing notice to defendants of the request for injunctive relief and seizure order would effectively deny plaintiffs of any meaningful remedy. A restraining order, by itself, will not prevent the sale or movement of the counterfeit goods, since the defendants may have ready access to other locations or other sellers to which she can transfer the goods, or she can simply destroy or conceal the goods. Lured by the prospect of substantial cash profits, counterfeiters have shown little, if any, respect for court orders. See, e.g., Vuitton v. White, 945 F.2d 569, 575 (3d Cir. 1991) (counterfeit merchandise sold despite an outstanding permanent injunction against some of the defendants). If the defendants violate the restraining order, the disappearance of counterfeit goods leaves this Court and plaintiffs without an effective remedy to identify the violators or prove their violation.

Plaintiffs have not publicized the requested seizure. Plaintiffs have provided overwhelming evidence that defendants have not only used, but have admitted sale of, counterfeit Louis Vuitton, Chanel and Prada marks in their sale of infringing goods.

Immediate and irreparable injury will occur if the seizure is not ordered. Potential damage to reputation and likelihood of confusion constitute irreparable injury. Opticians Ass'n v. Independent Opticians, 920 F.2d 187, 195-96 (3d Cir. 1990). In addition, the distribution of infringing merchandise constitutes irreparable injury. In re Vuitton et Fils S.A., supra., 606 F.2d at 4; Helene Curtis Industries. Inc. v. Church & Dwight Co., 560 F.2d 1325, 1332-33 (7th Cir. 1977) cert. denied 434 U.S. 1070 (1978). Once defendants have the opportunity to "unload" their counterfeit goods or dispose of their records, it will be virtually impossible to determine the identity

-15-

of defendants' suppliers, customers, or the extent of their unlawful activities. Moreover, as the declaration of Mr. Matsuoka demonstrates, the defendants here have numerous items in back rooms displaying counterfeit Louis Vuitton, Chanel and Prada marks. The counterfeit goods are the best evidence of defendants' violation of the trademark infringement laws and must be preserved in order to prosecute this action.

Plaintiffs have provided the exact locations of the store and outdoor vendor where the counterfeit goods and business records will be seized. H. Mitsuoka Decl.; A. Arriola Decl.

As established in Part IE, above, the harm to plaintiffs in denying their application for an ex parte seizure order far outweighs the harm to the defendants. Moreover, any legitimate interests of the defendants are protected by the statute's requirements that plaintiffs shall post adequate security for the seized goods, 15 U.S.C. § 1116(5)(D); that defendants shall be protected from any publicity regarding the seizure, 15 U.S.C. § 1116(6); that a protective order may issue regarding confidential information contained in the seized records, 15 U.S.C. § 1116(7); that the seizure order shall be sealed until defendants have the opportunity to contest the order, 15 U.S.C. § 1116(8); that an expedited hearing be held to allow defendants to contest the seizure order, 15 U.S.C. § 1116(10)(A); and that if there is a wrongful seizure, defendants shall be entitled to relief, 15 U.S.C. § 1116(11).

Finally, due to the nature of the counterfeiters' illicit operations, it is apparent that defendants would destroy, move, hide or otherwise make her counterfeit goods inaccessible to the court if they were given notice of plaintiffs' application. A. P. Arriola Decl.; see Vuitton v. White, 945 F.2d at 575 (notice of seizure order will cause defendants to conceal or destroy counterfeit merchandise). As one court noted in granting a temporary restraining order without notice to the seller of counterfeit goods, "[i]f notice is required that notice all too often appears to serve only to render

-16-

ARRIOLA, COWAN & ARRIOLA, HAGATNA, GUAM 96910

fruitless further prosecution of the action." In re Vuitton et Fils S.A., 606 F.2d at 4.

Issuance of ex parte seizure orders in trademark counterfeiting cases is now so well established in the federal courts that one court observed in Fimab-Finanziaria Maglificio Biellese Fratelli Fila S.p.A. and Fila Sports, Inc. v. Bruce Kitchen, et al., 548 F.Supp. 248, 249 (S.D. Fla. 1982): "the weight of authority around the country appears to favor the granting of ex parte seizure orders in trademark counterfeiting cases, where fake versions of well-known brands are deliberately passed off to the public as the genuine article." Plaintiffs wish simply to maintain the status quo by preventing the disappearance of the counterfeit merchandise and the records relating to the purchase and sale of such counterfeit merchandise. All of the requirements for an ex parte seizure order have been met here and plaintiffs request that one issue immediately.

## III.     THE FILE IN THIS ACTION SHOULD BE TEMPORARILY SEALED.

Plaintiffs also request that the Court issue an ex parte order temporarily placing the pleadings, papers, files and orders in this action under seal. This order is requested because defendants may learn of the filing of this action before the Temporary Restraining Order and Seizure Order sought by plaintiffs may be served upon defendants. 15 U.S.C. §§ 1116(6) and 1116(8) provide for a secrecy order to protect defendants from harm caused by premature publicity of the Temporary Restraining and Seizure Order.

In order for the ex parte seizure order to be effective, defendants must not be apprised in advance of the filing of plaintiffs' complaint, motion, or orders of the court. If defendants learns of the action or orders of the court, they are likely to remove, destroy, or hide the counterfeit goods, thus defeating the remedy sought by plaintiffs. This Court has previously issued similar orders sealing the files in other cases. Louis Vuitton, et al. v. Suzie H.C. Yim, et al., Civil Action No. 00-

-17-

ARRIOLA, COWAN & ARRIOLA, HAGATNA, GUAM 96910

00069; <u>Hunting World, Inc. v. City Hill Co. (Guam) Ltd., et al.</u>, Civil Action No. CIV93-00053;

<u>Hunting World, Inc. v. Jimar's Investment Co., et al.</u>, Civil Action No. CIV92-00050 (D. Guam, Order dated August 17, 1992); <u>Chanel v. Baro's French Enterprise, et al.</u>, CV89-0048 (D.Guam) (Order dated August 30, 1989); <u>Reebok v. C.H.C. Incorporated</u>, CV-88-00030 (D. Guam, Order dated June 17, 1991). Accordingly, plaintiffs respectfully request that the Court temporarily seal the record in this case until the defendants are served or until the date set for hearing on the order to show cause, unless otherwise provided by the court.

## IV.    DISCOVERY IN THIS MATTER SHOULD BE ACCELERATED.

This Court has previously authorized accelerated discovery in trademark infringement cases. <u>Louis Vuitton, et al. v. Suzie H.C. Yim, et al.</u>, Civil Action No. 00-00069 (Order dated December 19, 2000); <u>Hunting World, Inc. v. City Hill Co. (Guam) Ltd., et al.</u>, Civil Action No. CIV93-00053; <u>Hunting World, Inc. v. Jimar's Investment Co., et al.</u>, Civil Action No. CIV92-00050 (D. Guam, Order dated August 17, 1992); <u>Louis Vuitton v. Ok Cha Sun, et al.</u>, CV89-00061 (D.Guam) (Order dated October 27, 1989); <u>Louis Vuitton v. Marina Pizarro</u>, CV89-00060 (D.Guam) (Order dated October 27, 1989); <u>Louis Vuitton v. Jimar's Investment Co., et al.</u>, CV89-00059 (D.Guam) (Order dated October 27, 1989). Plaintiffs request accelerated discovery allowing the immediate inspection and copying of the records of the sale or purchase of the counterfeit goods by the defendants. This will be facilitated by the execution of the seizure order initially. However, plaintiffs also seek the use of traditional methods of discovery on shortened time. This will enable plaintiffs to learn the information it is entitled to in this action before the records can be moved or destroyed.

Specifically, plaintiffs seek accelerated discovery to learn the identity of defendants' suppliers, dealers, transferors, sellers and customers of counterfeit Louis Vuitton merchandise. If

ARRIOLA, COWAN & ARRIOLA, HAGATNA, GUAM 96910

-18-

discovery and inspection of records are not commenced immediately, defendants' business records will likely "disappear" and defendants' recollections of the identities of their suppliers and customers will fade entirely.

15 U.S.C. §§ 1503(l) and 1116(d)(1)(A) allow for seizure of records documenting the manufacture, sale or receipt of items relating to defendants' trafficking in counterfeit goods. Further, an appropriate protective order may be issued, as stated in the proposed order accompanying this request, limiting early access to the records. Federal Rules of Civil Procedure 30(a) and 34(b) provide that plaintiffs may obtain leave of court to take early depositions and to require early document production.

Records relating to the purchase and sale of the counterfeit goods will enable plaintiffs to compute their statutory damages and to take appropriate legal action against the other traffickers acting in concert with defendants. Plaintiffs therefore request that they be permitted to inspect and copy the defendants' records, computer records, including but not limited to electronic or digital records, diskettes, hard drives and CD-Roms, regarding goods bearing the Louis Vuitton, Chanel and Prada marks in order to preserve the evidence and avoid the destruction of records. Plaintiffs also request that they be allowed to take the depositions of defendants and to inspect documents and electronic records on shortened time.

**CONCLUSION**

For all of the foregoing reasons, plaintiffs Louis Vuitton, Chanel and Prada respectfully request that the Court grant an ex parte order to show cause why the court should not issue a preliminary injunction restraining the defendant and others acting in concert or participation with them, from continuing to infringe the registered trademarks of Louis Vuitton, Chanel and Prada; an

ARRIOLA, COWAN & ARRIOLA, HAGATNA, GUAM 96910

ex parte order temporarily restraining and enjoining defendants, and others acting in concert or participation with her, from committing further acts of infringement and from disposing in any manner any goods bearing plaintiffs' registered trademarks which are in their possession, custody or control; an ex parte seizure order directing the United States Marshal or peace officers, to seize and impound defendants' counterfeit Louis Vuitton, Chanel and Prada merchandise and related business documents; an ex parte order that the documents, pleadings and other papers in this case be filed under seal; and an ex parte order granting them leave to take accelerated discovery.

Dated this 5th day of May , 2003.

ARRIOLA, COWAN & ARRIOLA
Counsel for Plaintiffs LOUIS VUITTON
MALLETIER, CHANEL, INC. and PRADA,
S.A.

BY: _____
**ANITA P. ARRIOLA**

ARRIOLA, COWAN & ARRIOLA, HAGATNA, GUAM 96910

-20-