ANITA P. ARRIOLA, ESQ.
JOAQUIN C. ARRIOLA, JR., ESQ.
**ARRIOLA, COWAN & ARRIOLA**
259 Martyr Street, Suite 201
Hagatna, Guam 96910
Telephone:  (671) 477-9731/33
Telecopier:  (671) 477-9734

Counsel for Plaintiffs LOUIS VUITTON
MALLETIER, CHANEL, INC. and
PRADA, S.A.



FILED
DISTRICT COURT OF GUAM
JUN 23 2003
MARY L. M. MORAN
CLERK OF COURT

## UNITED STATES DISTRICT COURT OF GUAM

| | |
|---|---|
| LOUIS VUITTON MALLETIER and CHANEL, INC., and PRADA, S.A.<br><br>Plaintiffs,<br><br>vs.<br><br>HANA TRADE CORPORATION dba HONOLULU GIFT SHOP aka U.S.A. T-SHIRTS AND GIFT ITEMS, VENDOR DOE II aka SU KIM, VENDOR DOE III, KIM CHOL KUN dba ANGELUS, VENDOR DOE IV aka LISA'S, VENDOR DOE V aka FASHION CITY, VENDOR DOE VI aka CORALYN'S VARIETIES, VENDOR DOE VII and DOES I THROUGH XX,<br><br>Defendants. | CIVIL CASE NO. 03-00013<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' <u>SECOND EX PARTE APPLICATION</u> FOR TEMPORARY RESTRAINING ORDER, SEIZURE ORDER, ORDER TO SHOW CAUSE FOR PRELIMINARY INJUNCTION, ORDER SEALING FILE AND ORDER ACCELERATING DISCOVERY** |

COMES NOW the Plaintiffs, LOUIS VUITTON MALLETIER and CHANEL, INC., and PRADA, S.A. and hereby incorporates the Memorandum of Points and Authorities filed on May 5, 2003 in support of Plaintiff's Ex Parte Application for Temporary Restraining Order, Seizure Order,

-1-

**ORIGINAL**

Order to Show Cause For Preliminary Injunction, Order for Sealing File and Order for Accelerating Discovery.

This second ex parte application relates to three new defendants who have been added to this action in the Verified First Amended Complaint: (1) VENDOR DOE IV, aka LISA's, (2) VENDOR DOE V, aka FASHION CITY, and (3) VENDOR DOE VI. These vendors are located a the Dededo Mall and are selling and distributing handbags and other goods falsely bearing the registered trademarks of plaintiffs Louis Vuitton Guam, Inc. ("Louis Vuitton"), Chanel, Inc. ("Chanel") and PRADA S.A. ("Prada") (collectively "Plaintiffs"). The goods sold by these three defendants are inferior imitations and counterfeit copies of the high quality merchandise sold by plaintiffs under their federally registered trade names and trademarks (hereinafter referred to as "the counterfeit goods"). The three new defendants openly sell the counterfeit goods as genuine merchandise manufactured by Plaintiffs. R. Resendez Decl.

Plaintiffs' second ex parte request for a temporary restraining order, seizure order, order to show cause for preliminary injunction, order sealing file and for accelerated discovery is made to prevent irreparable harm to plaintiffs while this action remains pending. Without ex parte entry of these orders, plaintiffs cannot halt the sale or disappearance of counterfeit goods or otherwise prevent the destruction of crucial evidence which would enable plaintiffs to ascertain the manufacturers, suppliers, and distributors of the counterfeit goods beyond the named defendants. Unless such orders are issued ex parte, defendants will simply dispose of or hide the counterfeit goods and related business records and they will disclaim knowledge of the traffickers of the counterfeit goods. Consequently, the ex parte orders requested by plaintiffs must be issued without delay.

///

///

## FACTUAL BACKGROUND

### A. Historical Background.

Plaintiffs by reference incorporate the Historical Background provided in their Memorandum of Points and Authorities in Support of Ex Parte Application filed May 5, 2003.

### B. Investigation of Defendants' Illegal Sale of Counterfeit Goods.

On May 23, 2003, Rosa Resendez, an employee of Arriola, Cowan & Arriola participated in the investigation of the sale of counterfeit Louis Vuitton, Chanel and Prada merchandise at the Dededo mall for the purpose of determining whether certain stores and vendors in the Dededo Mall were selling counterfeit goods marked with the Louis Vuitton, Chanel and Prada names and trademarks. On May 26, 2003, Ms. Resendez visited a store known as "Lisa's" located in the Dededo Mall in the indoor swap meet area.

Ms. Resendez observed a bag bearing the trademark symbols of Louis Vuitton on display. Ms. Resendez also visited a store known as "Fashion City" located in the Dededo Mall in the indoor swap meet area. While at Fashion City, Ms. Resendez spoke with a sales person who admitted that the Louis Vuitton, Chanel and Prada items were made in Korea. R. Resendez Decl. The salesperson further stated that she prefers to sell the counterfeit goods to locals because taxi drivers may bring investigators posing as tourists who might raid her store for counterfeit items. R. Resendez Decl. While at "Fashion City" Ms. Resendez purchased several counterfeit goods including a set of Chanel earrings and necklace, a pair of Chanel sunglasses with Chanel logo, a Louis Vutton leather key chain and cellular accessory strap, and a mid-sized Prada purse. R. Resendez Decl. Ms. Resendez also observed additional counterfeit goods including jewelry accessories and sunglasses with Chanel logos; Louis Vuitton bags, wallets, cellular straps, key chains, cigarette cases, and belts; and Prada bags.

Case 1:03-cv-00013   Document 15   Filed 06/23/2003   Page 3 of 6

On June 11, Ms. Resendez visited the Dededo mall and entered a store adjacent to Fashion City called "Coralyn's Varieties." R. Resendez Decl. At this store she saw several Louis Vuitton items, including a monogram backpack, monogram checkbook wallet, 2 monogram canvas organizers, 2 monogram canvas coin holders, and 2 monogram canvas small wallet/credit cardholders. Also on her June 11 visit to the Dededo mall, Ms. Resendez entered a store directly across from Coralyn's. R. Resendez Decl. In the store, she saw Prada wallets, Louis Vuitton wallets, and a Louis Vuitton purse. Her companion Francesca purchased a man's Prada black wallet for $15.00. Id.

The four new defendants are not authorized retailers or dealers of plaintiffs' merchandise. R. Terlaje Decl.; H. Kim Decl.; K. Kehres Decl. This action has been instituted to remedy what is tantamount to the theft of a substantial portion of plaintiffs' income, reputation and goodwill by the sale of unauthorized, counterfeit merchandise. The new defendants are presently offering for sale, distributing and/or selling goods practically identical in appearance, though not in quality, to the products distributed by plaintiffs. R. Terlaje Decl.; H. Kim Decl.; K. Kehres Decl. The goods sold by the three defendants bear trademarks identical to those used by plaintiffs on genuine Louis Vuitton, Chanel and Prada merchandise.

Defendants' sale of counterfeit goods is without plaintiffs' permission and without payment of royalties or licensing fees of any kind. Because defendants pay no royalties and offer goods of inferior quality, they undercut the prices of legitimate vendors who abide by the law in the conduct of their business activities. More importantly, defendants' use of the identical labeling and trademarks of plaintiffs allows defendants to trade upon and tarnish the valuable reputation of plaintiffs in its name, marks and labeling. The consequent damage to plaintiffs' names, reputations and goodwill is incalculable and plaintiffs are irreparably injured. R. Terlaje Decl.; H. Kim Decl.; K. Kehres Decl.

The sale of such counterfeit goods also causes significant confusion in the mind of the consuming public as to who produces and/or authorizes the sale of said merchandise. R. Terlaje Decl.; H. Kim Decl.; K. Kehres Decl. Plaintiffs have undoubtedly lost sales due to actual confusion on the part of customers who mistakenly believe that the counterfeit items sold by defendants are the genuine products of plaintiffs. Furthermore, the counterfeit goods are not of the same high quality of the genuine products sold by plaintiffs under their trademarks. Plaintiffs legitimately fear not only a current loss of sales to defendants, but also a future loss of sales and reputation because customers have no way of knowing that defendants' inferior merchandise is not of plaintiffs' making. Id.

## ARGUMENT

The Plaintiffs further incorporate by reference herein the argument, statutory authority, and case law in their Memorandum of Points and Authorities in Support of Ex Parte Application filed May 5, 2003. Plaintiffs submit that the authority cited therein is applicable to the facts presented, and requests that the Court grant the Second Ex Parte Application on the law as previously provided, as applicable to the facts and the new defendants, provided herein.

## CONCLUSION

For all of the foregoing reasons, plaintiffs Louis Vuitton, Chanel and Prada respectfully request that the Court grant an ex parte order to show cause why the court should not issue a preliminary injunction restraining the four new defendants and others acting in concert or participation with them, from continuing to infringe the registered trademarks of Louis Vuitton, Chanel and Prada; an ex parte order temporarily restraining and enjoining the three new defendants, and others acting in concert or participation with her, from committing further acts of infringement and from disposing in any manner any goods bearing plaintiffs' registered trademarks which are in their possession, custody or control; an ex parte seizure order directing the United States Marshal or peace officers, to seize and impound defendants' counterfeit Louis Vuitton, Chanel and Prada

merchandise and related business documents; an ex parte order that the documents, pleadings and other papers in this case be filed under seal; and an ex parte order granting them leave to take accelerated discovery.

Dated this 23rd day of June, 2003.

> ARRIOLA, COWAN & ARRIOLA
> Counsel for Plaintiffs LOUIS VUITTON
> MALLETIER, CHANEL, INC. and PRADA, S.A.
>
> BY: _____
> **ANITA P. ARRIOLA**